## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRYAN and TAMARA HOLLAND, | ) |
| | ) |
|       Plaintiffs, | ) |
| | ) |
| v. | ) |
| | )     **Case No. 03-2666-CM** |
| GMAC MORTGAGE CORPORATION, | ) |
| | ) |
|       Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

On October 21, 2003, plaintiffs Bryan and Tamara Holland brought suit in the District Court of Wyandotte County, Kansas, against defendant GMAC Mortgage Corporation ("GMAC") for several claims relating to defendant's failure to properly credit Bryan Holland's first payments toward his mortgage loan with defendant. The state court case was transferred to this court on December 31, 2003. Bryan Holland seeks actual and punitive damages for a state law defamation of credit claim and violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and both Bryan and Tamara Holland seek actual and punitive damages for invasion of privacy. The parties have filed cross summary judgment motions encompassing all of the outstanding claims. Pending before the court is plaintiff Bryan Holland's Motion for Summary Judgment (Doc. 116) and defendant GMAC Mortgage Corporation's Motion for Summary Judgment (Doc. 122).

**I.**     **Facts[1]**

**A.**     **RESPA Claims**

---

[1] The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56.

On February 28, 2001, Bryan Holland obtained a first mortgage loan from Corinthian Mortgage Corporation ("Corinthian") to purchase a home. At that time, Bryan Holland was not married to his current wife, plaintiff Tamara Holland. Thus, Tamara Holland is not obligated under the mortgage loan.

Corinthian contracted with defendant to service the loan on its behalf. On or about March 22, 2001, Corinthian notified Bryan Holland of this contract in a letter, which states: "Corinthian Mortgage Corporation has contracted with GMAC Mortgage to subservice your loan under the Corinthian Mortgage Corporation name." Defendant has serviced Bryan Holland's loan since its inception. Defendant states that Corinthian did not assign Bryan Holland's note and mortgage loan to defendant. Rather, Corinthian transferred the servicing rights of Bryan Holland's loan to defendant.

Bryan Holland timely paid, and defendant timely received, the first mortgage loan payment on April 1, 2001 in the amount of $448.22 at defendant's San Diego facility. However, one of defendant's employees, Joy Mercado, erroneously posted the payment to the account of another customer and did not credit the payment to Bryan Holland's mortgage loan account.

Because of defendant's failure to credit the April 1, 2001 payment to the correct account, defendant considered Bryan Holland's account delinquent. Accordingly, defendant reported Bryan Holland delinquent to Trans Union, Equifax, Experian, and/or Innovis, the credit reporting agencies ("CRAs"), monthly from July 3, 2001 through September 5, 2003. Defendant's reporting to the CRAs runs two months behind. Thus, on September 7, 2001, defendant reported Bryan Holland delinquent for the first time based on his July 2001 payment.

On April 23, 2001, Bryan Holland telephoned defendant to inform it that defendant had not credited check number 524 for $448.22 for his April 1, 2001 payment. He was told by defendant that he

needed to fax a copy of his check to defendant before defendant could correct his account if an error had been made.  Defendant asserts that, when a customer calls in to advise of a missing payment, it is standard procedure to have the customer either provide a number off the back of the check over the phone so defendant can attempt to determine the account to which the check was applied, or to request that the customer fax a front and back copy of the check.  This information allows defendant to determine whether the check in question was correctly applied to the customer's account.  Defendant claims that it cannot make this determination without either the number from the back of the check or the front and back copies of the check.

After the phone call, Bryan Holland asserts that he had a work secretary, Wanda Petty, fax a front and back copy of check number 524 to the attention of the individual he allegedly spoke with at the fax number that defendant's employee allegedly gave him.  Defendant asserts that its records do not reflect receipt of any such fax.

On or about June 7, 2001, defendant sent a letter to Bryan Holland which starts, "Welcome to GMAC Mortgage!  You were recently advised by CORINTHIAN MORTGAGE CORPORATION that the servicing of your loan has been transferred to our office effective June 4, 2001."  Page two of this letter included some information specified by RESPA § 6(c).

On or about March 4, 2003, Bryan Holland sent defendant a letter via certified mail regarding his account.  The letter was accepted by an employee of defendant on March 10, 2003.  The March 4, 2003 letter consists of a three page letter, a two page spread sheet and an authorization to speak to Tamara Holland.  The letter, which identifies Bryan Holland's name and account number, is divided into four parts,

each of which correspond to the categories of the attached two page spreadsheet.  The first paragraph of

the letter states:

> I am writing you today concerning the account listed above.  In past
> attempts I have tried to explain to you that this negligence you speak of, in
> your correspondence, is not mine.  However, it is yours.  You will see on
> the attached documents that my payments to GMAC have been made in a
> timely manner.

Part one of the letter begins by stating: "You will see in this section entitled, **GMAC Mortgage Payment**

**History (Per Borrowers** [sic] **Bank Statement)**, that all payments due have in fact been received by

GMAC."  The first two sentences of part two of the letter state: "You will see in this section, entitled

**Posting Dates and Correspondence,** that all of your posting dates for my payments are clearly late, due

to GMAC's neglect to timely enter them.  In some cases the amounts posted to my account do not match

the amounts of my payments."  Part three of the letter begins: "In this section entitled, **Fees and Misc.**

**Charges**, you will see a summary of charges pertaining to each due date.  I do not feel that I owed [sic]

any of these charges if they are derived from any late penalties."  The first sentence of part four states: "In

this section entitled, **Contact by GMAC concerning account**, I have calculated all of the written

harassing correspondence that I receive on a weekly basis concerning this account."  Part four continues:

> In my opinion the payment due 5/1/01 [plaintiff's first payment] is where all
> of this started.  You acquired my loan from Corinthian Mortgage sometime
> during this period.  My payment was most likely paid to Corinthian, since
> they were whom I would've owed.  This money would've been sent to you
> (by Corinthian) after they would have received it.  This created a late
> payment from the very beginning.  The problem was never corrected
> causing late charges and fees to make all future payments late due to
> shortages in the amount paid.

Plaintiffs contend that Tamara Holland, who mailed the March 4, 2003 letter, also enclosed the front and back of check number 524, Bryan Holland's first payment, in the same envelope. Defendant contends that copies of check number 524 were not included with the March 4, 2003 letter.

On April 16, 2003, defendant responded to Bryan Holland's March 4, 2003 letter. In doing so, defendant asserts that it believed it was responding to Bryan Holland's concerns. The April 16, 2003 letter states:

> Our records indicate, in January 2003, we reviewed your escrow account. In , [sic] we mailed this analysis to you. According to this analysis, your escrow account included an escrow shortage of $185.47. This shortage was caused by an increase in your county taxes and homeowner's insurance. As a result, effective for March 1, 2003, your payment increased to $499.07.
>
> On June 5, 2002, we received $450.00 for June 2002 payment. Unfortunately, as this payment was not the required amount of $493.42, we applied these funds to "other fees". Please be advised, previously, we have applied your payments by applying less funds to your escrow account.
>
> Additionally, we received your February 2003 payment**,** in the amount of $499.07, on April 7, 2003. We will no longer accept deviated payments. **According to the terms outlined in your Note, a full payment is due the first of each month.** Therefore, we are unable to apply these funds to your account.
>
> To ensure your credit is not affected and no further late fees are assessed to your account, please remit $1,070.92 for the March 2003 and April 2003 payment. We apologize for any confusion.
>
> If we may be of further assistance, please contact our Customer Care Department at 1-800-766-4622 or visit our Web site at www.gmacmortgage.com.

On May 7, 2003, defendant spoke with Tamara Holland by phone and advised her of the past due payments on the loan. Tamara Holland told defendant that the mortgage loan was not past due.

-5-

Accordingly, defendant asked her to fax front and back copies of the applicable checks to allow it to research the issue.

On or about July 14, 2003, Bryan Holland's attorney sent defendant a second letter, which again included the same two-page spread sheet. Defendant received this letter on July 16, 2003. The July 14, 2003 letter includes Bryan Holland's name and account number, and states in pertinent part:

> The problems with this mortgage account appear to have begun with the very first two payments due April 1, 2001 and May 1, 2001. My clients made those checks payable to GMAC as they were instructed to do by Corinthian Mortgage . . . . Those two checks were cashed but have never been credited to the Holland's account.

On August 27, 2003, defendant sent a response letter, which states in pertinent part:

> This is in response to an inquiry from Charles D Kugler regarding a possible missing payment on your account.
>
> In order to complete the research on your account, we require a legible copy of the front and back of the actual canceled check/s in question. The back of the check will provide us with the information regarding who cashed it, as well as where it was cashed. Until we receive a copy of the front and back of the missing check/s, we cannot research this issue any further.

On or about September 16, 2003, Bryan Holland's attorney sent defendant a third letter. Defendant received this letter on September 18, 2003. Enclosed in the September 16, 2003 letter was a front and back copy of three checks: (1) check number 524 dated March 30, 2001; (2) check number 529 dated April 20, 2001; and (3) check number 533 dated May 29, 2001. The September 16, 2003 letter states in pertinent part: "I have reviewed in some depth the payment records, and it appears to me that GMAC has never given Mr. Holland credit for the first payment."

On October 3, 2003, defendant correctly credited Bryan Holland's first payment to his account, reversed all late charges and brought his account current. On October 22, 2003, defendant requested that all CRAs which had ever reported Bryan Holland delinquent on his mortgage loan to amend his credit to reflect that his account with defendant was current and had never been delinquent. On July 20, 2004, defendant made the same request to all CRAs. On October 5, 2004, in response to an inquiry from CSC Credit Services, defendant reported that Bryan Holland was current on the loan and had never been delinquent on the mortgage loan.

Bryan Holland contends that even after his account was corrected, defendant never provided him with a written statement of the correction or the reasons underlying the corrections and reversal of three years of late charges and miscellaneous improper charges. Defendant asserts that through this litigation, defendant advised Bryan Holland that the aforementioned corrections were made to his account on October 3, 2003.

This action was filed in state court on October 8, 2003.

**B.     Defamation of Credit Claim**

Bryan Holland was denied credit numerous times after obtaining his mortgage loan with defendant, including: (1) on or about June 20, 2001, Bryan Holland was denied an AT&T Universal Card credit card; (2) on or about June 24, 2001, Bryan Holland was denied a credit card by Citibank; (3) on or about July 30, 2001, Bryan Holland was denied a loan by CitiFinancial; (4) on October 22, 2001, Bryan Holland was denied a credit card by Providian Financial; (5) on February 21, 2002, Bryan Holland was denied a car loan; (6) on May 18, 2002, Bryan Holland was denied a car loan by Trans South; (7) on May 18, 2002, Bryan Holland was denied credit by AmeriCredit regarding this same car loan; (8) on March 25, 2003,

Bryan Holland was denied a refinance mortgage; (9) in May 2004, Bryan Holland was denied credit to purchase a motorcycle from Big Dog Bikes of Kansas City; (10) on June 9, 2004, Bryan Holland was denied a Dish Network promotion.  Bryan Holland was told he could obtain Dish Network service if he made a deposit, but he refused to do so because he "did not want to pay any money out of [his] pocket.";  (11) American Family Homeowners declined to renew Bryan Holland's insurance and he was given an increased renewal rate; and (12) Progressive Insurance advised Bryan Holland that his auto insurance would be impacted by his credit score and that his insurance would be more expensive.  Bryan Holland admits that he does not know what information was relied on for most of these declinations of credit.

Bryan Holland's employer never asked to see his credit report and has taken no adverse action against him because of defendant's credit reporting.  Bryan Holland testified that he does not anticipate that his employer will take any adverse action against him in the future because of defendant's credit reporting.

Prior to obtaining his mortgage loan, Bryan Holland had two collection accounts on his credit report.

## C.     Invasion of Privacy Claim

Pursuant to the mortgage loan executed by Bryan Holland, if the borrower fails to make a payment due under the mortgage loan, the "Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property . . . ."  Additionally, the "Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default."

Plaintiffs allege defendant contacted (or attempted to contact) them in several different ways: (1) telephone calls unanswered by the Hollands; (2) telephone calls answered by plaintiffs' answering machine; (3) telephone calls answered by third-persons; (4) telephone calls answered by Bryan Holland; (5)

telephone calls answered by Tamara Holland; (6) letters addressed to Bryan Holland; and (7) notes left on the front door of the home.

Plaintiffs allege that beginning as early as July 9, 2001, defendant mailed numerous letters to Bryan Holland at his residence.  In addition, representatives of defendant came to plaintiffs' home on June 26, 2002; September 25, 2002; October 19, 2002; November 21, 2002; December 26, 2002; January 21, 2003; February 24, 2003; April 14, 2003; May 20, 2003; June 20, 2003; July 22, 2003; and July 31, 2003.  On each occasion listed above, defendant's representative left a piece of paper on plaintiffs' door instructing Bryan Holland to call defendant at a 1-800 number to discuss his delinquent account.  On two occasions, Tamara Holland observed individuals near the home that she believed were representatives of defendant.  On one occasion she saw an individual parked across the street from the house, and on another occasion she saw an individual parked in front of her next-door neighbor's house.

## II.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.    Analysis

## A.      RESPA Claims

## 1.      Violations of § 2605(d)

In its motion for summary judgment, defendant argues that because defendant serviced Bryan Holland's mortgage loan from its origination on, there was never a transfer of the servicing of the mortgage loan pursuant to § 2605(d) of RESPA.  Therefore, defendant argues, Bryan Holland's RESPA § 2605(d) claim fails as a matter of law.

Section 2605(d) provides that:

> [d]uring the 60-day period beginning on the effective date of transfer of the servicing of any federally related mortgage loan, a late fee may not be imposed on the borrower with respect to any payment on such loan and no such payment may be treated as late for any other purposes, if the payment is received by the transferor servicer (rather than the transferee servicer who should properly receive payment) before the due date applicable to such payment.

12 U.S.C. § 2605(d).  "The term 'servicer' means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)."  12 U.S.C. § 2605(i)(2). "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

The purpose of § 2605(d) is to prohibit lenders or servicers from imposing a fee in the sixty-day window from the time a mortgage loan is transferred from one servicer to another.  The court finds that defendant fits squarely within the definition of a "servicer"—*i.e.* the entity person responsible for servicing of a loan—because defendant is, and always has been, responsible for collecting Bryan Holland's mortgage loan payments.

It is undisputed that defendant has serviced Bryan Holland's loan since its inception.  On or about March 22, 2001, Corinthian advised Bryan Holland via letter that Corinthian, the originator of the mortgage loan, transferred the servicing rights of his mortgage loan to defendant.  Shortly thereafter, Corinthian granted defendant primary rights to service the mortgage loan.  Pursuant to this change, defendant sent Bryan Holland a letter exclaiming: "Welcome to GMAC Mortgage!  You were recently advised by CORINTHIAN MORTGAGE CORPORATION that the servicing of your loan has been transferred to our office effective June 4, 2001."

Thus, it is clear that on June 4, 2001, Corinthian changed its relationship with defendant from a contractual relationship to granting defendant all the servicing rights of Bryan Holland's mortgage loan free of any contractual relationship with Corinthian.  However, the court finds that this situation does not fall within the purview of § 2605(d).  The purpose of § 2605(d) is to prohibit the imposition of late fees to a mortgage loan borrower when the borrower sends his mortgage loan payment to the incorrect servicer following a change in the servicing of a mortgage loan.  *See id.* § 2605(d).  Before sending his first payment, Bryan Holland was advised to send all mortgage payments to GMAC.  Accordingly, Bryan Holland sent his first payment to GMAC, and he does not assert that he ever sent his mortgage loan payment to the incorrect servicer.  Therefore, § 2605(d) is inapplicable on these facts.  Defendant's summary judgment motion on this issue is granted.

**2.     Qualified Written Requests**

Bryan Holland moves for summary judgment on the issue of whether the three letters he or his attorney sent to defendant—the March 4, 2003 letter, the July 14, 2003 letter, and the September 16, 2003 letter—were "qualified written requests" as defined by RESPA.  Following a discovery dispute,

defendant acknowledges that the March 4, 2003 letter and the July 14, 2003 letter are "qualified written requests." At issue is whether the September 16, 2003 letter meets the definition of a "qualified written request."

> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that–
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

*Id.* § 2605(e)(1)(B).

The court finds that Bryan Holland's September 16, 2003 letter meets the definition of a "qualified written request." Specifically, the letter includes Bryan Holland's name, account number, and the following statement: "I have reviewed in some depth the payment records, and it appears to me that GMAC has never given Mr. Holland credit for the first payment." The court finds that this sentence provides sufficient detail for defendant to ascertain why Bryan Holland believed his account was in error. Thus, the September 16, 2003 letter is a "qualified written request."

**3.      Violations of § 2605(e)(2)**

Bryan Holland next argues that defendant failed to properly respond to his three "qualified written requests" in violation of 12 U.S.C. § 2605(e)(2). Section 2605(e)(2) provides:

> Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall–

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes–

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

*Id.* § 2605(e)(2).

**a.      March 4, 2003 Letter**

Bryan Holland argues that defendant's April 16, 2003 letter responding to the March 4, 2003 "qualified written request" does not comport with the requirements of § 2605(e)(2).  Defendant asserts that, at the time, it believed its April 16, 2003 letter responded fully to Bryan Holland's concerns.

It is undisputed that defendant responded to Bryan Holland's March 4, 2003 letter within RESPA's sixty day requirement.  Kari Engelhardt, defendant's employee who drafted defendant's response letter,

-13-

testified that after reading Bryan Holland's letter, she thought he was confused about defendant's

calculation of his escrow account.  The court agrees that confusion over Bryan Holland's escrow account

was one of the inquiries he discussed in his March 4, 2003 letter.  However, the court finds that no

reasonable person could read Bryan Holland's three page letter and accompanying two-page spreadsheet

as confined to an inquiry about his escrow account.

     The March 4, 2003 letter addresses a variety of topics, including that Bryan Holland believed that

(1) all his payments have been timely received by defendant; (2) defendant was not posting his checks in a

timely manner; (3) his overpayments should be applied toward principle; (4) defendant was not sending his

statements on time; (5) the amount posted by defendant does not match the amount he believed he paid; (6)

he does not owe any of the fees and charges derived from late penalties; (7) he does not understand some

of the fees charged to him; and (8) he is very bothered by what he deemed harassment and threats of

foreclosure on the part of defendant.  Bryan Holland clearly outlined exactly what he believed to be the

problem on the third page of his letter when he states:

> In my opinion the payment due 5/1/01 [plaintiff's first payment] is where all
> of this started.  You acquired my loan from Corinthian Mortgage sometime
> during this period.  My payment was most likely paid to Corinthian, since
> they were whom I would've owed.  This money would've been sent to you
> (by Corinthian) after they would have received it.  This created a late
> payment from the very beginning.  The problem was never corrected
> causing late charges and fees to make all future payments late due to
> shortages in the amount paid.

Significantly, Bryan Holland mentions an increase in his payment only briefly when he states: " . . . I would

like an explanation as to why our payment went from $448.22 to $493.42 and $499.07."

     In response, defendant's April 16, 2003 letter states that Bryan Holland's mortgage loan payment

increased as a result of an increase in county taxes and homeowner's insurance.  The letter also discusses

-14-

defendant's receipt of Bryan Holland's February 2003 payment on April 7, 2003, and states: "To ensure your credit is not affected and no further late fees are assessed to your account, please remit $1,070.92 for the March 2003 and April 2003 payment."  Defendant's letter closes by stating that Bryan Holland may contact defendant's Customer Care Department with further questions at a toll-free number or via its website.  Thus, defendant's April 16, 2003 response does not discuss any of Bryan Holland's primary inquiries.

The court finds that defendant's response to Bryan Holland's March 4, 2003 letter violates § 2605(e)(2).  Specifically, § 2605(e)(2)(A) is inapplicable in this situation because defendant did not correct the errors discussed in Bryan Holland's letter.   However, defendant violated § 2605(e)(2)(B) or (C) because (1) is not apparent from defendant's response that defendant conducted an investigation into Bryan Holland's inquiries, and (2) defendant's response does not respond to the bulk of Bryan Holland's inquiries.  The court acknowledges that Bryan Holland's letter is not a model of clarity and conciseness.  Notwithstanding, the court finds that after reading Bryan Holland's entire March 4, 2003 letter, a reasonable person would conclude that he had numerous complaints, most of which revolved around his delinquent account.  That defendant subjectively believed it was answering each of Bryan Holland's inquiries is immaterial.  Significantly, defendant did not cite, nor could the court locate, authority supporting the proposition that defendant's subjective belief is the appropriate standard to apply to these facts.  Accordingly, the court grants Bryan Holland's summary judgment motion on this issue.

**b.     July 14, 2003 Letter**

Bryan Holland next asserts that defendant violated § 2605(e)(2) with respect to his July 14, 2003 "qualified written request." Defendant argues that its August 27, 2003 letter in response satisfies the requirements of § 2605(e)(2).

The July 14, 2003 letter was sent by plaintiffs' attorney, and outlined many of the same inquiries as the March 4, 2003 letter. In response, defendant requested that Bryan Holland send a copy of the front and back of the actual canceled check or checks in question. The letter also states: "Until we receive a copy of the front and back of the missing check/s, we cannot research this issue any further." Bryan Holland argues that defendant's response does not satisfy § 2605(e)(2)(B), which requires defendant to (1) conduct an investigation, and (2) "provide the borrower with a written explanation or clarification that includes . . . a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer." *Id.* § 2605(e)(2)(B). Defendant argues that by requesting the canceled checks it alleges it needs before it can conduct an investigation, defendant's response conforms with the requirements of § 2605(e)(2)(C), which requires defendant to (1) conduct an investigation, and (2) "provide the borrower with a written explanation or clarification that includes . . . an explanation of why the information requested is unavailable or cannot be obtained by the servicer." *Id.* § 2605(e)(2)(C).[2]

Even assuming all the facts in favor of the non-moving party (defendant), the court finds that defendant violated § 2605(e)(2)(C) because defendant did not conduct an investigation before responding to Bryan Holland's inquiry. The court understands defendant's contention that it was unable to conduct an

---

[2] Bryan Holland also argues that defendant's request for copies of the canceled checks is duplicative because he included them in his March 4, 2003 letter, and also faxed them shortly after learning of the alleged discrepancy. Defendant denies ever receiving the canceled checks. The issue of whether defendant received the canceled checks is a question of fact, but not one that is material to the court's findings.

investigation without Bryan Holland's canceled checks. However, defendant could have remedied its situation by responding to Bryan Holland's letter more quickly. This would have enabled defendant to conduct an investigation using Bryan Holland's canceled checks and still adequately respond to Bryan Holland's "qualified written request" within sixty days. Alternatively, defendant could have conducted a limited investigation using the information it had at the time. As Bryan Holland points out, it would be contradictory to the purpose of RESPA to allow defendant to avoid liability by placing its burden of investigating Bryan Holland's inquiries back on him. *See id.* § 2601(b) (discussing the purpose of RESPA); *Cardiello v. The Money Store, Inc.*, 2001 WL 604007, at *8 (S.D.N.Y. June 1, 2001) ("RESPA's basic purpose is to protect borrowers from exploitation by lenders."). This is especially true knowing now that the errors in Bryan Holland's account were entirely defendant's fault. The court grants Bryan Holland's summary judgment motion on this issue.

c.      **September 16, 2003 Letter**

Bryan Holland's third letter, dated September 16, 2003 and written by Bryan Holland's attorney, included copies of the front and back of three checks. After ascertaining that it had misapplied Bryan Holland's first check, defendant correctly credited Bryan Holland's first payment to his account, reversed all late charges, and brought his account current. During the course of discovery for this litigation, defendant advised Bryan Holland that it had made the abovementioned corrections to his account. Bryan Holland argues that he did not receive a written response in compliance with § 2605(e)(2), and the court agrees.

Section 2605(e)(2)(A) provides that after receiving a "qualified written request" and making the appropriate corrections to the borrower's account, the servicer shall "transmit to the borrower a written

-17-

notification of such correction." Defendant did not provide Bryan Holland with a written notification of its

corrections, and offers no exceptions to this rule. As such, the court finds that defendant violated §

2605(e)(2)(A) with respect to the September 16, 2003 letter, and grants Bryan Holland's summary

judgment motion on this issue.

**4.       Violations of § 2605(e)(3)**

In addition, Bryan Holland argues that defendant violated § 2605(e)(3) when it reported his

account to the CRAs as being delinquent. Defendant does not dispute that it first reported Bryan Holland's

account to the CRAs as being delinquent on September 7, 2001, and continued to do so through

September 5, 2003. Section 2605(e)(3) of RESPA states:

> During the 60-day period beginning on the date of the servicer's receipt
> from any borrower of a qualified written request relating to a dispute
> regarding the borrower's payments, a servicer may not provide information
> regarding any overdue payment, owed by such borrower and relating to
> such period or qualified written request, to any consumer reporting agency .
> . . .

12 U.S.C. § 2605(e)(3). In light of the court's aforementioned rulings and the fact that defendant chose

not to specifically respond to Bryan Holland's arguments on this point, the court finds that defendant

violated § 2605(e)(3) each time it reported Bryan Holland to the CRAs within sixty days of (1) March 10,

2003, when defendant received the March 4, 2003 "qualified written request"; (2) July 16, 2003, when

defendant received the July 14, 2003 "qualified written request"; and (3) September 18, 2003, when

defendant received the September 16, 2003 "qualified written request."

Bryan Holland contends, and defendant does not dispute, that defendant reported Bryan Holland's

account to the CRAs as delinquent on (1) April 4, 2003; (2) May 2, 2003; (3) August 1, 2003; and (4)

September 5, 2003.  The court finds as a matter of law that defendant violated § 2605(e)(3) on each of

these four dates.[3]  The court grants Bryan Holland's summary judgment motion on this issue.

**B.      Defamation of Credit Claim**

**1.      Preemption by the FCRA**

  In general, defendant asserts that it is immune from Bryan Holland's defamation of credit claim

pursuant to the Fair Credit Reporting Act ("FCRA").  Bryan Holland did not bring suit under the FCRA,

but the FCRA potentially limits the circumstances in which he may bring his defamation of credit claim.

  "The purpose of FCRA is to ensure accuracy and fairness in credit reporting and to require that

such reporting is confidential, accurate, relevant, and proper."  *Matthiesen v. Banc One Mortg. Corp.*,

173 F.3d 1242, 1245 (10th Cir. 1999) (citing 15 U.S.C. § 1681).  Therefore, the "FCRA enables

consumers to protect their reputations, and to protect themselves against the dissemination of false or

misleading credit information."  *Id.* (citations omitted).   It is undisputed that defendant is a furnisher of

information to the CRAs, and therefore has certain obligations under the FCRA.

  Defendant's first argument is that Bryan Holland's defamation of credit claim seeks damages for

violations of duties governed by the FCRA.  Because no private cause of action exists for violations of §

1681s-2(a), *see* 15 U.S.C. § 1681s-2(d), defendant argues that Bryan Holland is precluded from bringing

his defamation of credit claim.  Significantly, defendant did not cite any authority for this position.  The

court's research found one case that supports defendant's position.  The Southern District of Alabama, in

an apparent decision of first impression, has held that "where the plaintiff has no private cause of action

---

[3]Bryan Holland also asserts that defendant violated § 2605(e)(3) on October 21, 2003.  However,
Bryan Holland's own facts contradict this statement.  Also, Bryan Holland abandons this argument in his
reply brief.

under § 1681s-2(a), the plaintiff cannot allege violations of 1681s-2(a) as the basis for state law claims."

*Riley v. GMAC*, 226 F. Supp 2d 1316, 1320 (S.D. Ala. 2002) ("Either no federal court has confronted a

similarly pled complaint or the proposition is so fundamental that no court has bothered to publish on the

issue.").  However, this court has previously declined to follow this stance, *Millett v. Ford Motor Credit

Co.*, 2005 U.S. Dist. LEXIS 8806 (D. Kan. April 20, 2005); *Aklagi v. NationsCredit Fin.*, 196 F. Supp

2d 1186 (D. Kan. 2002), and will continue to do so.  The court denies summary judgment on this

argument.

Next at issue is whether defendant is immune from Bryan Holland's defamation of credit claims

pursuant to the FCRA.  Furnishers of information may be granted both absolute and qualified immunity

from state law claims under the FCRA.  Section 1681t(b)(1)(F) of the FCRA provides furnishers with

absolute immunity from state law claims with respect to subject matter regulated under § 1681s-2.  15

U.S.C. § 1681t(b)(1)(F).  Qualified immunity under § 1681h(e) provides furnishers of information with

immunity from "defamation, invasion of privacy, or negligence" claims, "except as to false information

furnished with malice or willful intent to injure each consumer."  15 U.S.C. § 1681h(e).  These two

provisions provide overlapping, and potentially contradictory, immunity.

> The tension between [§ 1681t(b)(1)(F) and § 1681h(e)] therefore results
> from the fact that § 1681h(e) permits state tort claims, but requires a higher
> standard of proof for those in the nature of defamation, slander, or invasion
> of privacy, while § 1681t(b)(1)(F) prohibits all state claims covered by §
> 1681s-2.  These inherent contradictions have caused disagreement about
> how best to harmonize them.  No circuit court has weighed in on this issue.

*Stafford v. Cross County Bank*, 262 F. Supp 2d 776, 785 (W.D. Ky. 2003).   Indeed, the Tenth Circuit

has not yet considered this issue.

Defendant argues that Bryan Holland is preempted from bringing his state law defamation of credit claim because the FCRA grants defendant absolute immunity from such claims. Section 1681s-2 governs the obligations triggered *after* a furnisher receives notice of a dispute. Therefore, §1681t(b)(1)(F) and § 1681s-2 have the effect of giving defendant absolute immunity from that portion of Bryan Holland's defamation of credit claim that occurred *after* defendant received notice of Bryan Holland's credit dispute. At issue before the court is the type of notice needed to trigger § 1681s-2's notice requirement.

Citing *Millett v. Ford Motor Credit Co.*, a recent opinion by the undersigned judge, defendant argues that absolute immunity under §1681(b)(1)(F) was triggered when Bryan Holland notified defendant of the inaccuracy of his mortgage loan account. Specifically, defendant argues that it received notice on April 23, 2001, the date Bryan Holland made his first phone call to defendant. To be clear, *Millett* applied §1681(b)(1)(F) to a state law defamation claim and held that "defendant is entitled to absolute immunity from plaintiffs' state law claims for any violations that occurred after defendant received notice of the inaccurate information." 2005 U.S. Dist. LEXIS 8806, at *8. Although *Millett* discusses absolute immunity, it did not decide the issue at hand: the standard for deciding when notice is actually received. Similarly, *Aklagi v. NationsCredit Financial*, a case cited heavily by defendant and this court in *Millett*, did not reach this issue.

Bryan Holland argues that receipt of notice depends on the specific subsection of § 1681s-2 triggering liability. Therefore, liability under § 1681s-2(a) is triggered when a furnisher of credit receives notice of a dispute *by the consumer*, while liability under 1681s-2(b) is triggered when a furnisher of credit is notified of a dispute *by a CRA*. Bryan Holland argues, therefore, that pursuant to § 1681s-2, defendant is only absolutely immune from his defamation claim for the time periods after a CRA notified defendant of

-21-

his credit dispute.  In this case, there is no evidence that a CRA notified defendant of his credit dispute.

For this reason, Bryan Holland argues, defendant is not entitled to §1681t(b)(1)(F) immunity.

The court disagrees.  Although § 1681t(b)(1)(F) preempts state law claims governing "any subject matter regulated under . . . section 1681s-2 of this title," the particulars of § 1681s-2's notice requirements are not the "subject matter" of § 1681s-2.  In other words, Bryan Holland's logic goes one step too far. And the sole case cited in support of his argument is neither on-point nor binding on this court.  *See Woltersdorf v. Pentagon Fed. Credit Union*, 320 F. Supp 2d 1222, 1226 (N.D. Ala. 2004).  Several courts have also concluded that a furnisher of information need only receive notice, without restraints or limitations, to trigger immunity under § 1681t(b)(1)(F).  *See Millett* , 2005 U.S. Dist. LEXIS 8806, at *8; *Aklagi*, 196 F. Supp 2d at 1194-95; *Stafford*, 262 F. Supp 2d at 787 ("However, § 1681s-2 only implicates conduct occurring after the [furnisher of information] knew it possessed inaccurate information, or consciously avoided such knowledge.  To the extent the [furnisher] furnished any inaccurate information after receiving notice of the [plaintiff's] dispute, the [furnisher's] conduct falls squarely within § 1681s-2.").

The court is left to decide when defendant received notice of Bryan Holland's dispute.  Defendant argues this occurred on April 23, 2001, the date on which Bryan Holland first telephoned defendant about the discrepancies in his account.  Bryan Holland argues that, at the very least, notice is triggered when defendant received his first written notice of the discrepancy.  Although the court's preference is to define notice loosely to include telephone calls or other types of informal communication, the court is troubled by the fact that defendant claims that it first received notice of Bryan Holland's dispute on April 23, 2001, but it was unable to investigate and correct the disputes until September 2003, when it alleges it first received

copies of his canceled checks.  Defendant wishes to choose the first instance of notice for the purposes of

receiving § 1681(b)(1)(F) immunity, but the last date of notice for purposes of liability.  Nevertheless, the

court finds that the statute requires "notice" rather than "written notice" or "notice with sufficient facts to

fully investigate the dispute."  Accordingly, defendant received notice of Bryan Holland's dispute on April

23, 2001, and, pursuant to § 1681(b)(1)(F), defendant is absolutely immune from Bryan Holland's

defamation of credit claim predicated on defendant furnishing inaccurate information about his credit to the

CRAs occurring *after* April 23, 2001.

Defendant argues that Bryan Holland's defamation of credit claim predicated on defendant

furnishing inaccurate information to the CRAs *before* April 23, 2001 is also preempted by qualified

immunity pursuant to § 1681h(e).  However, the court need not reach this issue, because defendant did not

report Bryan Holland's mortgage loan as delinquent to the CRAs until September 2001.  Therefore, the

basis for Bryan Holland's defamation claim could not have arisen before April 23, 2001.  Defendant's

summary judgment motion on this issue is granted.

**C.      Invasion of Privacy Claim**

Defendant also argues that it is entitled to summary judgment because plaintiffs' invasion of privacy

claim is barred by the statute of limitations.  Pursuant to Kan. Stat. Ann. § 60-513(a), the statute of

limitations for a claim for invasion of privacy is two years.  The clock begins running from the time the cause

of action accrues.  *Id.* § 60-513(b).  Defendant argues that plaintiffs' invasion of privacy claim accrued on

or before July 2001, when defendant began telephoning and sending mail to plaintiffs' residence.  Plaintiffs

contend that the statute of limitations began at some later, unknown date, when the alleged harassment

became repetitious enough to cause substantial injury.  The court assumes that because plaintiffs' cause of

-23-

action was filed on October 8, 2003, plaintiffs would argue that substantial injury accrued sometime before October 8, 2001.

The court finds that although it is unclear exactly when plaintiffs' cause of action accrued, the court cannot find that plaintiffs' potential cause of action accrued sometime between July 2001 and October 2001. Thus, the court finds that the date on which defendant's contacts with plaintiffs became severe or intrusive enough to create a cause of action for invasion of privacy is a genuine issue of material fact. *See Great Plains Christian Radio, Inc. V. Cent. Tower,* Inc., 399 F. Supp 2d 1185, 1200 (D. Kan. 2005) (denying the defendant's summary judgment motion and holding that the issue of when the plaintiff's claim accrued for purposes of the applicable statute of limitations is a question of fact for the jury); *Kan. Wastewater, Inc. v. Alliant Techsystems, Inc.*, 257 F. Supp 2d 1344, 1350 (D. Kan. 2003) (same) (citing *Bryson v. Wichita State Univ.*, 880 P.2d 800, 803 (Kan. App. 1994)).

Moreover, the court finds that defendant is not entitled to summary judgment on the merits of plaintiffs' invasion of privacy claim. "As to privacy claims based upon a defendant's intrusion upon seclusion, a defendant is liable if he or she intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another and the intrusion would be highly offensive to a reasonable person." *Lowe v. Surpas Res. Corp.*, 253 F. Supp 2d 1209, 1237-38 (D. Kan. 2003) (citing *Moore v. R.Z. Sims Chevrolet-Subaru, Inc.*, 738 P.2d 852, 856 (Kan. 1987)).

> To recover under this particular invasion of privacy theory, a plaintiff must establish the existence of two conditions: "First, something in the nature of an intentional interference in the solitude or seclusion of a person's physical being, or prying into his [or her] private affairs or concerns, and second, that the intrusion would be highly offensive to a reasonable person."

*King v. Metcalf 56 Homes Ass'n*, 385 F. Supp 2d 1137, 1145 (D. Kan. 2005) (quoting *Moore*, 738 P.2d at 857).

The facts surrounding plaintiffs' privacy claim are limited. Plaintiffs allege that defendant's representatives called plaintiffs on a "near daily" basis between May 6, 2002 and October 3, 2003, but the record does not reflect this frequency. Plaintiffs also received numerous letters, and defendant visited plaintiffs' home and placed notes in their door on at least twelve occasions between June 26, 2002 and July 31, 2003. On two instances, Tamara Holland saw what she believed to be representatives of defendant sitting in their cars and watching plaintiffs' home.

Viewing this evidence in the light most favorable to plaintiffs, the court is unable to find that these contacts do not rise to the level of what a reasonable person would deem "highly offensive," especially in light of the fact that Bryan Holland's account was only delinquent because of defendant's mistake. *Lowe*, 253 F. Supp 2d at 1237-38. A jury is in the best position to decide what reasonable people consider "highly offensive." As such, defendant's summary judgment motion is denied on this issue.

## D.    Punitive Damages[4]

Finally, defendant seeks summary judgment on plaintiffs' request for one million dollars in punitive damages. Under Kansas law, punitive damages may be awarded to punish a wrongdoer for malicious, vindictive, or willful and wanton invasion of another's rights. As such, in order to recover punitive damages, a plaintiff must both plead and prove that the defendant's conduct was willful, wanton, fraudulent, or

---

[4] It appears from the Pretrial Order that plaintiffs' claim for punitive damages is contingent upon the success of Bryan Holland's defamation of credit claim. Since the court has granted summary judgment for defendant on Bryan Holland's defamation of credit claim, the court believes that plaintiffs' claim for punitive damages is now moot. Nevertheless, the court will entertain arguments on this issue during the limine hearing prior to trial.

malicious. *Trotter v. K Mart Corp.*, 1994 WL 123614, at *1 (D. Kan. Mar. 3, 1994). "[A] 'wanton act' is defined as something more than ordinary negligence but less than a willful act. It must indicate a realization of imminence of danger and a reckless disregard and indifference to the consequences." *Cerretti v. Flint Hills Rural Elec. Co-op. Ass'n*, 837 P.2d 330, 346 (Kan. 1992). Thus, the acts complained of must show not simply lack of due care, but that the defendant realized the imminence of injury to others from its act, yet refrained from taking steps to prevent injury because it was indifferent to whether it occurred or not. *Id.*

The court concludes that there are genuine issues of material fact as to defendant's motives and its state of mind. These issues can only be resolved by a jury evaluating the evidence and the credibility of the witnesses at trial. Therefore, the court denies defendant's motion for summary judgment as to plaintiffs' request for punitive damages.

**IT IS THEREFORE ORDERED** that plaintiff Bryan Holland's Motion for Summary Judgment (Doc. 116) is granted, and defendant GMAC Mortgage Corporation's Motion for Summary Judgment (Doc. 122) is granted in part and denied in part.

Dated this 26th day of April 2006, at Kansas City, Kansas.

 s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**

-26-