**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **BRYAN AND TAMARA HOLLAND,** )<br>)<br>**Plaintiffs,** )<br>)<br>v. )<br>)    No. 03-2666-CM<br>)<br>**GMAC MORTGAGE CORPORATION,** )<br>)<br>**Defendant.** )<br>) | |

## MEMORANDUM AND ORDER

In May 2006, this court held a jury trial on (1) whether defendant was liable to plaintiffs Bryan and Tamara Holland on invasion of privacy claims and (2) whether plaintiff Bryan Holland suffered any damages as a result of seven violations of the Real Estate Settlement Procedures Act ("RESPA"). Before the jury trial, the court held that, as a matter of law, defendant violated RESPA with its actions. The jury awarded plaintiff Bryan Holland $10,000 on his invasion of privacy claim and a total of $140,000 on his RESPA claims. The jury also awarded plaintiff Tamara Holland $30,000 on her invasion of privacy claim. This case is before the court on plaintiff Bryan Holland's request for attorney fees and costs (Doc. 206). Plaintiff seeks approximately $214,000 in attorney fees and costs.[1]

A plaintiff who is successful in a RESPA action is entitled to "the costs of the action, together with any attorney fees incurred in connection with such action as the court may determine

---

[1] Plaintiff suggested in his opening brief that he might be seeking enhanced attorney fees. In his reply brief, however, he specifically disclaimed that he seeks enhanced fees, stating that he only wanted to "receive full compensation for the result obtained which was predominated by the RESPA claim and result." (Doc. 214, at 7.)

to be reasonable under the circumstances." 12 U.S.C. § 2605(f)(3).

The court follows a two-step process to calculate an award of reasonable attorney fees. First, the court multiplies the number of hours reasonably expended by a reasonable hourly fee, resulting in the "lodestar" amount. *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party moving for attorney fees "bears the burden of . . . documenting the appropriate hours expended and the hourly rate." *Case v. Unified Sch. Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998). The lodestar figure "is the presumptively reasonable fee." *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir. 1994). Second, the court may adjust the lodestar upward or downward as necessary. *Blum*, 465 U.S. at 888.

**I. Attorney Fees**

**A. Lodestar Amount**

*1. Number of Hours Reasonably Expended*

To satisfy its burden, the party requesting fees must submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case*, 157 F.3d at 1250 (citing *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983)). "The prevailing party must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998). The court will reduce the hours claimed if the attorneys' records are inadequate or fail to precisely document the time necessary to complete specific tasks. *Hensley*, 461 U.S. at 433–34; *Case*, 157 F.3d at 1250.

The court need not "identify and justify every hour allowed or disallowed, as doing so would

run counter to the Supreme Court's warning that a 'request for attorney's fees should not result in a second major litigation.'" *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998) (citations omitted) (considering a 42 U.S.C. § 1988 fee award).  Instead, the court may generally reduce the hours, as long as it gives a sufficient reason for doing so.  *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir. 1986); *see also Hofer v. UNUM Life Ins. Co. of Am.*, 441 F.3d 872, 885 (10th Cir. 2006) (affirming district court's award of attorney fees using half of the hours requested, based in part on the fact that the plaintiff recovered half of the damages sought); *Carter v. Sedgwick County, Kan.*, 36 F.3d 952, 956 (10th Cir. 1994) (citation omitted) (stating that the court may use its discretion to "make a general reduction in hours claimed to achieve what the court perceives to be a reasonable number" with respect to attorney fees under § 1988 and Title VII).

Defendant asks the court to reduce the hours claimed by plaintiff in three areas: (1) time entries which are insufficiently detailed for the court to determine reasonableness; (2) entries relating to David. A. Stivers, an expert witness whose testimony the court excluded from trial; and (3) entries relating to the preparation of irrelevant and untimely-disclosed witnesses.  Defendant also asks the court to reduce plaintiff's recovery based on plaintiff's overall lack of success, but the court will address that issue after calculating the lodestar.[2]

---

[2] It is not entirely clear whether the court should engage in this analysis when calculating reasonable hours or when determining whether to lower the lodestar amount.  *See Milham v. Perez*, No. 03CV00702MSKMJW, 2005 WL 1925770, at *2 n.1 (D. Colo. Aug. 11, 2005).  Most courts address "partial success" in the second step, when deciding whether to lower the lodestar amount. *See, e.g., Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 404 F. Supp. 2d 1281, 1288–90 (D. Kan. 2005); *Wirtz v. Kan. Farm Bureau Servs., Inc.*, 355 F. Supp. 2d 1190, 1203–05 (D. Kan. 2005).  This approach is logical based on *Hensley*'s statement that "[t]he product of reasonable hours times a reasonable rate does not end the inquiry.  There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" 461 U.S. at 434.  But it also makes sense to arrive at the lodestar's number of reasonable hours based on the amount of time spent on successful versus unsuccessful claims.  *See, e.g., Milham*, 2005 WL 1925770, at *2–*5; *Aquilino v. Univ. of Kan.*, 109 F. Supp. 2d 1319, 1327 (D.
(continued...)

**a. Detail of Time Records**

The court has reviewed the records submitted by plaintiff's attorneys. The attorneys and non-secretarial legal staff kept moderately detailed contemporaneous time records of their work in this case. Although most of the entries sufficiently inform the court of the way the time was spent, some of the entries are vague, making it difficult for the court to ascertain whether the work recorded in those entries was redundant or otherwise unnecessary. For instance, many of the entries simply state "research," without identifying what issues were being researched. Although fees for issue-specific research are recoverable, fees for general legal background research are not. *See Erickson v. City of Topeka, Kan.*, 239 F. Supp. 2d 1202, 1208 (D. Kan. 2003); *Gudenkauf v. Stauffer Commc'ns, Inc.*, 953 F. Supp. 1237, 1244 (D. Kan. 1997). And many entries simply refer to a "conference," although it appears that the topics of the conferences were appropriately redacted to omit privileged information.

The court would have preferred to see more detail in some of the entries. Nevertheless, by reviewing the entries as a whole, in the context of one another and the dates different pleadings were filed in the case, the court is convinced that plaintiff's attorneys spent a reasonable amount of time on the difficult and novel issues raised in this case.

This analysis does not address defendant's main argument—that the court cannot tell from many entries to which claim the time related. Defendant wants the court to exclude all hours spent on claims other than plaintiff's successful RESPA claims. The court will not exclude those hours here, but will consider it as a factor in whether to reduce the lodestar.

---

(...continued)
Kan. 2000) (reducing hours by those spent on unsuccessful claim); *Koopman v. Water Dist. No. 1*, No. 88-2573-GTV, 1995 WL 646786, at *2–*5 (D. Kan. Oct. 20, 1995) (reducing hours for claims lost, but reducing overall lodestar for damages awarded). The order of analysis makes no difference here.

-4-

**b. Time Relating to David A. Stivers**

The court ruled before trial that plaintiff's proposed expert witness David A. Stivers would not be allowed to testify. The court can isolate over $10,000 in fees associated with briefing the motion to exclude, as well as deposing, consulting, and preparing Mr. Stivers.

Defendant asks the court to disallow all fees associated with Mr. Stivers, but cites no authority for its position. The court's exclusion of Mr. Stivers does not necessarily mean that plaintiff unreasonably spent time deposing him and otherwise preparing to offer his testimony at trial. There is nothing in the record to indicate that plaintiff sought to introduce Mr. Stivers's testimony in bad faith or frivolously. To the contrary, the court finds that plaintiff's fees were reasonable with respect to Mr. Stivers, and rejects defendant's position on this issue.

**c. Time Relating to Irrelevant and Untimely-Disclosed Witnesses**

The court excluded several of plaintiff's witnesses from testifying at trial because they were not disclosed in a timely manner. Plaintiff also incurred fees for preparation of witnesses who were not used at trial. Defendant asks the court to disallow the expenses for these witnesses because they had no bearing on plaintiff's successful RESPA claim.

The court is unwilling to speculate as to the reasons that plaintiff elected not to use particular witnesses at trial. And the court is reluctant to rule that fees for "unused" trial preparation cannot be recovered. Parties necessarily make last-minute trial strategy decisions based on developments at trial. The court's pretrial rulings may also effect whether witnesses will offer relevant testimony at trial (as they did in this case). The court finds that it was reasonable for plaintiff to prepare to use the witnesses, even if the court ultimately excluded them or plaintiff chose not to call them. The court will not reduce plaintiff's submitted hours on this basis.

*2. Reasonable Hourly Rate*

Defendant does not challenge the reasonableness of plaintiff's hourly rates. The court finds, based on the evidence submitted by plaintiff as well as the court's own knowledge of prevailing rates charged by attorneys in the Kansas City area, that the hourly rates charged are reasonable based on the professional skills, experience, and reputation of the attorneys, particularly regarding this type of litigation. Based on these rates, as well as the reasonable hours set forth above, the court arrives at a lodestar figure of $200,957.27.[3]

**B. Lodestar Adjustment**

The court may reduce the lodestar amount where a plaintiff "achieved only partial or limited success." *Hensley*, 461 U.S. at 436. "In evaluating whether the lodestar amount should be adjusted when the prevailing party obtained only partial success, the court must consider two questions: (1) whether the claims on which the plaintiff did not prevail were related to those on which [the plaintiff] did prevail; and (2) whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Metz*, 39 F.3d at 1493.

With respect to the first question, "[a] claim is related to another claim if it is based on "a common core of facts or will be based on related legal theories." *Id.* at 435. If claims are related, failure on some claims should not preclude full recovery if plaintiff achieves success on a significant, interrelated claim. *Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995). But plaintiff may not recover attorney fees for time spent prosecuting unrelated, unsuccessful claims. *See Browder v. City of Moab*, 427 F.3d 717, 723 (10th Cir. 2005). And the court may still reduce a

---

[3] Plaintiff requested discovery of defense counsel's hours and rates in order to show by comparison that plaintiff did not spend an unreasonable amount of time on tasks and did not charge excessive fees. Because the court finds that plaintiff's hours and rates were reasonable, the court need not order discovery of defendant's fees.

fee request where some of plaintiff's related claims fail. *Robinson*, 160 F.3d at 1283 (citation omitted).

At one point or another, this case involved fourteen claims, including claims for both Bryan and Tamara Holland. All of the claims arose directly or indirectly out of one original activity: defendant's failure to credit Bryan Holland's first mortgage payment to his account. Plaintiffs voluntarily dismissed nine of the claims, and the court granted summary judgment on two. The court finds that the invasion of privacy claims (for which attorney fees are not authorized by statute) arose out of different facts than the other claims in this case. They were based on defendant's collection efforts, while the other claims were based on defendant's failure to properly handle plaintiff's account. The other claims in the case, however, were "alternative legal grounds for a desired outcome," and the court need not reduce a fee merely because it rejected alternative grounds for relief. *Hensley*, 461 U.S. at 436.

With respect to the second question, the court does not merely tally plaintiff's wins and losses; instead, the court qualitatively assesses the significance of plaintiff's successes and failures. *Dill v. City of Edmond*, 72 F. App'x 753, 757 (10th Cir. 2003). The key question is whether plaintiff "achieved the principal goals of the lawsuit." *Id.* (citation omitted).

Plaintiff asserts that he obtained an exceptional result in this case. The total verdict (including the awards for non-RESPA claims) was nine times defendant's offer of judgment, which encompassed fees. According to plaintiff, he initiated the lawsuit to correct his credit history so that he could refinance his home and terminate his mortgage relationship with defendant, as well as recover damages for defendant's actions. Plaintiff states that he was able to pay off his mortgage as a result of the jury verdict and terminate his legal relationship with defendant.

Plaintiff's statements may be accurate, but the court cannot ignore the significant difference

between the damages plaintiff claimed in the pretrial order and the damages awarded at trial. Plaintiff may assert that he achieved the goal of his lawsuit, but in the pretrial order, he sought $850,000 in actual damages and $1,000,000 in punitive damages. He offered to settle the case for much less, but that was well before he undertook the burdens of proceeding to trial.

Additionally, although the court found that most of the claims in this case were related, the court is troubled by the large number of unsuccessful claims that plaintiffs pursued in this case. The court commends plaintiffs for voluntarily dismissing claims that they determined were futile, but they did not dismiss the claims until the litigation was well underway. Moreover, a large part of the summary judgment briefing centered on claims other than the RESPA claims. Plaintiffs may have prevailed on two theories, but a large amount of time and resources were spent on claims that either plaintiffs abandoned or the court dismissed. The court is mindful that it should not merely tally the wins and losses, but determines that the number of unsuccessful claims in this case merits some consideration.

Based on the relative success of plaintiff's RESPA claims and the damages awarded in this case, the court finds that a general reduction of twenty percent is reasonable. *Cf. Gudenkauf*, 953 F. Supp. at 1244 ("[R]ather than going through the billing statement and identifying each of the instances of the billing of the excessive hours, the billing for duplicative services, and the billing for background research, the court will reduce the requested hours by thirty percent."), *aff'd*, 158 F.3d 1074, 1082–83 (10th Cir. 1998); *see also United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir.2000) (upholding a twenty percent reduction); *Jane L.*, 61 F.3d at 1510 (upholding a thirty-five percent reduction).

Before ending its analysis, however, the court also considers the novelty and difficulty of the questions raised in this case; the high level of skill required to litigate this case; the fact that

plaintiff's lead counsel was a solo practitioner in a labor-intensive case; the risk that plaintiff's counsel took by accepting the case on a contingency basis, especially in light of the fact that litigation lasted over three years; the experience, reputation, and ability of the attorneys involved; and the undesirability of taking a RESPA case, which is a fairly novel area of litigation. The court has also reviewed the fee awards in comparable cases cited in plaintiff's brief. All of these factors weigh against reducing plaintiff's fees by a substantial amount. In other words, they weigh in favor of allowing plaintiff full fees. But the most important factor is the result obtained, *Hensley*, 461 U.S. at 436, and the court finds that an overall net reduction of fifteen percent is appropriate here, resulting in a net attorney fees award of $170,814.

## II. Costs

Plaintiff requests $13,042.62 in costs and other expenses. Defendant makes the same objections to costs that it makes to fees – namely, that the court should deny costs associated with unsuccessful claims, Mr. Stivers, and other witnesses not used. The same rationale applied above also applies to costs, with one exception: the costs for Mr. Stivers.

Plaintiff requests reimbursement for Mr. Stivers's fees totaling $5,843.50 (38.95 hours at $150 per hour). But plaintiff has not given the court a basis by which to evaluate whether the number of hours spent by Mr. Stivers and/or his hourly rate are reasonable. Plaintiff did not submit detailed billing by Mr. Stivers or any explanation of the work that he did. In the court's *Daubert* order regarding Mr. Stivers, the court found that "Mr. Stivers has not met with plaintiffs or reviewed their depositions or interrogatories. He has no knowledge of and has not reviewed any information about defendant. And he has no knowledge regarding the specific reasons that various companies have denied Bryan Holland's applications for credit." These findings force the court to speculate about how Mr. Stivers spent nearly forty hours in this case. Plaintiff's billing records complicate the

-9-

matter further. Expenses for Mr. Stivers appear to be included in plaintiff's billing total, but the court was unable to find itemized lines that coordinated with Mr. Stivers's $150/hour rate. Because of the inconsistencies, lack of information, and confusion regarding the reasonableness of fees for Mr. Stivers, the court finds that plaintiff failed to meet his burden of showing that he is entitled to recover his full costs for Mr. Stivers. The court can tell from the records that Mr. Stivers was involved in deposition preparation and deposition for about 12.5 hours. The court finds that this time was reasonable, but disallows all other costs for Mr. Stivers. For the costs of Mr. Stivers, the court will allow $1,875.

The court finds that the costs for other unused witnesses are reasonable for the work they did, but will reduce plaintiff's request for costs (after adjustment for the disallowed Stivers costs) by fifteen percent for the reasons stated above. The court notes that the amount plaintiff seeks to recover for depositions does not appear to encompass the deposition costs for Mr. Stivers, eliminating any risk of double recovery. Recoverable costs therefore total $7,713.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for an Award of Attorney's Fees and Costs (Doc. 206) is granted in part and denied in part. Plaintiff may recover his fees and a portion of costs requested less a general fifteen percent reduction, resulting in a total recovery of $178,527.

Dated this 29th day of January 2007, at Kansas City, Kansas.

**s/ Carlos Murguia**

**CARLOS MURGUIA**
**United States District Judge**